Mr. Phillips. Thank you, Mr. Chief Justice, and may it please the Court. The pivotal and in my judgment, incorrect holding of the 11th Circuit in the Norfolk Southern case is reproduced in the appendix to this case because Norfolk Southern is the controlling precedent for our particular dispute. In page 29A of the appendix to the petition, and there the court of appeals said that there is nothing in the 4R Act's plain language that indicates an intent to reach exemptions from generally applicable sales and use taxes. To our way of thinking, all this case is about whether or not the State has free reign to employ exemptions without exposing the effects of those exemptions to a challenge under v. 4 of the statute. Kennedy, but in light of our AFC case, it seems to me that what you're arguing is that the statute, the effect of your argument, is that the statute gives more protection in the case of nonproperty taxes than property taxes. And that's an odd reading of the statute, which is directed primarily to the property tax. No, I think, Justice Kennedy, what we're doing is recognizing that Congress was very specific and very explicit about how to treat property taxes and set up an entire, quite carefully reticulated scheme in dealing with them in B-1 and B-3, and then said, in general, when you're dealing with areas that are not approved by B-1 and B-3, then you have to examine whether or not the overall scheme, in fact, discriminates against rail carriers. So while it is true that there could be circumstances in which you may end up with somewhat more protection as a consequence of B-4, I think that's a function of Congress not having limited the B-4 exemption to property, and just saying it's a discrimination against the rail carrier generally that the statute is aimed to prevent or to protect against. Kagan. But what's the possible rationale for that distinction? Why would that distinction make any sense? Well, I think because Congress didn't have the full run mine of possibilities in front of it at that point in time. I mean, it probably had some sense of what other taxes were out there that might pose discrimination. But I do think Congress is very much concerned that the States, once they saw the road map laid out for them in B-1 through B-3, might seek other ways to recoup what they were going to lose in revenues when the 3-year period lapsed, and to be in a position to protect the railroads in the B-4, through B-4 in a situation when there would be future actions taken by the States. Is that in the legislative record? There's very little in the legislative record, Your Honor, because the specific formulation of this B-4 catch-all provision comes in very, very late in the 15-year process. Every other lower court or every lower court that's looked at it has drawn the inference, which seems to me the only fair inference to draw, when Congress said, look, this is not just for in-lieu taxes. I mean, there was some debate about that going on between the House and the Senate and the conference committee makes it clear. This is not just something that's adopted by the States in lieu of a broader property tax. It is intended, then, to have, I think, the language that you would normally give to a term as broad and sweeping as any other tax that discriminates against rail carriers. Scalia. Scalia. Mr. Phillips, this is what troubles me about your position. You make a viscerally appealing case on the facts of this case, where you say that your clients, the railroads, are being taxed more than competing carriers, truckers and water carriers. But if all it says is discriminates and you think that that has to be applied without qualification, then even if a State makes an exemption for, you know, widows over 85 and doesn't make the same exemption for railroads, the railroads win, right? Phillips. No, I don't believe that's the necessary. Scalia. Why? How do you limit the term discrimination, just a discrimination in favor of other competing carriers? Phillips. Well, I think it is discrimination that Congress would have intended to prohibit under these circumstances. So I think in the situation where you're talking about a single exemption for some group that does not compete or otherwise do any business with the railroads, we would not have a basis for saying that. Scalia. Why do you assume that? Congress didn't limit it to that in the property tax exemption? Phillips. Well, it did to some extent, because there was a whole question about how you, you know, you had a whole comparative class that Congress defines in the property context. So you make a comparison between industrial and commercial property and the railroad's property. So Congress defined the comparison class. But I don't think it's a fair question. Scalia. But not just industrial and commercial competitors with the railroads. The railroads were to be given, you know, the most favored treatment of all industrial and commercial entities, I think. Phillips. To be sure, Justice Scalia, but it was still, as compared to the entirety of the commercial and industrial property base, and the analysis has traditionally been the averages of the commercial and industrial property. And so you know, part of the problem here, it's not a problem, but, you know, one of the reasons why you can't make direct comparisons is that because of ACF industries, you don't evaluate exemptions under B-1 to B-3. Kennedy. But in this case, correct me if I'm wrong, off-road users, agricultural users and construction timber companies have the same tax structure as the railroads. Phillips. Right. So there is an objective reference, neutral, and it seems to me that that's quite rational to put the railroads there and not in the category of road users. Now, unless you're arguing that discrimination has to have a purposive component, that might give you a different case. I'm not sure you'd prevail on that either. Well, but remember, Justice Kennedy, we don't even get to this issue if what you say is that we're going to take all exemptions off the table. And I guess I'd go back to Justice Scalia's point, which is that there is a reason why this is a viscerally satisfying case, because we're talking here about a discrimination. You know, when Congress says we want to eliminate any tax that discriminates against, the one thing it seems to me clearly Congress did not intend to exclude from that was a tax that discriminates against the immediate direct competitors of the railroads in a way that would undoubtedly undermine the stability, the financial stability and success of the railroad. The concern was that the interstate actors should not be disadvantaged vis-a-vis the home people, the local businesses, and that was what was achieved. But you are not complaining about discrimination against the railroad in comparison to local businesses. You are complaining about that you're not getting most favored nation treatment vis-a-vis other interstate carriers. That's correct, Justice Ginsburg, but I think the premise of your question is the place where we would probably differ, which is to be sure Congress intended to protect interstate carriers against discrimination in favor of local operations. That's clear in B-1 through B-3 and otherwise pervades the legislative history. But there's also a significant amount of discussion in that same legislative history to encourage intermodal competition, that is, competition between the railroads and others, both intrastate and interstate. And so it seems to me the statute that prohibits all discrimination against rail carriers, identified as carriers, is one place where you would differ. Kennedy, suppose a tax were structured so that the same tax applied to railroads and motor transport, but because of the way the tax was assessed, the railroads paid far more per mile than the road transport. Could the railroad then come in and say, oh, we want to be like the farmers, we're off-road? I mean, I can see you making that argument. Case number two, welcome back. That's going to be your argument. Well, I would always like to come back. But I don't think the answer to that is that, again, I think the Court ought to interpret the term discrimination against the clear objectives that Congress intended to fulfill when it protected the railroads this way. And the two protections that are embedded in there is one that Justice Ginsburg identified, which was to protect them against local interests in a way where they had no political influence. And the other one is to protect them against their direct competitors in the intermodal competition realm. And if it's a discrimination that doesn't achieve either of those, then it seems to me you either say they are not similarly situated or you would hold that the State has a legitimate reason for doing what it's doing, and that that's just not a discrimination within the meaning of the statute. Scalia. So 85-year-old widows would be covered. That would be a discrimination, because, you know, they are only resident 85-year-old widows who are covered, right? Well, they would have a ‑‑ they would be, to be sure, a local interest. But I think the problem with this is, and it goes to the core argument that the State makes, which is, you know, how are you supposed to define local business for these purposes? And I don't think the answer to that is I have no way to know that, because Congress didn't purport to define the comparison class for purposes of B-4. But it seems to me that when Congress says, in the other tax ‑‑ Scalia, I agree with that. And that makes me suspect that Congress didn't want to forbid exemptions in B-4. But it seems to me quite un—I mean, but the flip side of that argument would be to say, if they imposed a tax of 4 percent on the railroads and 2 percent on 85-year-old widows, that would be challengeable under B-4, because it's not an exemption, it's a differential, and that the exemption down to zero is taxable, is attackable under B-4. It seems to me the right answer to this is there is no reason to include your widow as a relative comparison class for purposes of B-4 and get out of that problem, as opposed to setting this up. To me, the fallacy of this analysis is to try to use exemptions and say that there's something special about exemptions beyond the B-1, B-3 context, where Congress clearly acted recognizing that it had to protect the State's ability to have exemptions for property taxes. But then Congress goes to nonproperty taxes and to other taxes not covered by B-1 and B-3. Then it seems to me you have to ‑‑ you just should change the analysis, look at whether they are not similarly situated or being treated differently, and if there's any kind of State justification for that, and if not, go through the analysis in a way and protect the railroads precisely the way that Congress meant for them to be protected. Ginsburg. Mr. Phillips, are you saying that the railroads have to be taxed in the very same way as, say, the trucks, because one answer to your argument is, well, they haven't created a non-tax situation for the other interstate carriers. They are just subject to a different tax. The motor carriers have to pay motor fuel tax. So are you saying to the State of Alabama, you have to have the same sales tax, use tax for everyone, you can't have a motor fuel tax for one and a sales tax for the other? I think ultimately my conclusion would be that you can't have one, you can't have this kind of a tax on us and not tax the motor carriers the same way. But I do think it's important to recognize two considerations, at least as this case comes to this Court. One is that the State in the trial court conceded that the appropriate comparison class was the motor and water carrier. So the question of who is the ‑‑ who is properly in the comparison class has never been adjudicated. And second, it seems to me that the question of what constitutes discrimination is not the issue in this case. The only question in this case is whether there is something special about exemptions that makes them off limits to the B4 inquiry. And so I think, candidly, Justice Ginsburg, while I'm quite certain that Alabama and I would disagree fundamentally about how to approach this, it doesn't seem to me that that's a question that this Court should ‑‑ should tarry long over, and instead ought to simply evaluate the very narrow question that was both presented by the holding below and presented in a petition as it came through the solicitor general's invitation stage, which, again, as I say, very narrowly focuses exclusively on exemptions. And this Court should allow us to have it. Ginsburg. Well, why isn't the course of the Court taking account of what you said, that the provision about other taxes came out very late in the day? There's been a lot of time talking about the property tax, and the property tax, we know they wanted to preserve the exemptions. So why not take this latecomer with sparse discussion and say, well, we'll assume that they want to treat that with regard to exemptions the same way that they treated property tax, which was the big-ticket item? Well, I think part of the reason, it may well be because the property tax was a big-ticket item, so you were trying to protect certain State interests, and Congress did it very clearly. I think it is quite a remarkable stretch of construction of the statute for the Court to say, we're going to take this very carefully reticulated scheme, which creates the inference that Congress meant to protect these kinds of exemptions for the States, and say we're going to now incorporate that wholesale when Congress didn't use language that in any way compares, it didn't include, it didn't limit it to railroad property, it didn't define a class in any particular way, and instead basically said what we need to do here is something that will protect the railroads when the States become more innovative and come forward with additional problems, and we will leave it to the courts. Unfortunately, I recognize that's not the most satisfying solution to that, but we'll leave it to the courts to decide what forms of discrimination we would have intended to preclude because we're here to protect the railroads. If there are no further questions, I'd like to reserve the balance of my time. Thank you, Mr. Phillips. Ms. Sherry. Mr. Chief Justice, and may it please the Court, the only question that the Court needs to resolve today is whether a nonproperty tax that's imposed on a rail carrier, but from which its competitors are exempt, can ever be another tax that discriminates against a rail carrier under subsection B-4. The answer is yes. A lot of the Court's questions focus on some of the difficulties that are inherent in a discrimination inquiry. But as Mr. Phillips pointed out, those difficulties are just as inherent in a discrimination inquiry under B-4, whether we're talking about exemptions or whether we're talking about differential tax rates, whether we're talking about any other type of discrimination claim that could be brought under B-4. And that is the very nature of B-4. It broadly prohibits another tax that discriminates against a rail carrier, and inherent is that is the notion that courts are going to have to decide what it means to discriminate. Alito, do you think we have to decide whether the appropriate comparison class is the rail carrier's competitors or some broader class? I don't think the Court has to decide it. As Mr. Phillips pointed out, that was an issue that was conceded below by the State, at least at this stage of the proceedings. And they acknowledged that in note 7 of their brief. And so it wasn't something that was addressed by the Eleventh Circuit below. So I think to the extent the Court wants to address it, it should reject the notion that the only comparison class in a B-4 case, no matter what the B-4 case looks like, is all other commercial and industrial taxpayers. And I think the Court should reject that primarily because that's not what the text says. If you look at the language of B-4, it talks about another tax that discriminates against a rail carrier. Congress easily could have said another tax that discriminates against a rail carrier as compared to other commercial and industrial taxpayers, and it didn't do that. And, Justice Ginsburg, to your question involving whether we should be focusing on interstate versus local businesses and whether that was Congress's focus, of course that was certainly one of their concerns. But the reason that doesn't work is if you look to even subsections B-1 through 3, the comparison that's very clearly spelled out there is not between local businesses and interstate businesses. It's between rail transportation property and other commercial and industrial property. Now, that other commercial and industrial property can be owned by an interstate business like Walmart just as easily as it can be owned by a local coffee shop. And so I think to suggest that the only thing Congress wanted to prohibit was this local interstate type of discrimination is not borne out by the text. If you look at subsection B-4, we think the language speaks for itself. It speaks broadly of another tax that discriminates against a rail carrier. Another question that a number of you have asked is why Congress would want to treat property taxes exemptions differently than nonproperty tax exemptions, and I think the answer has to come from the text. In ACF, this Court concluded that Congress did not want to prohibit property tax exemptions based on the text of the statute and its structure. And when it comes to nonproperty taxes, the text of the Act and the structure of the Act simply tell a different story, and that has to be the best indicator of what Congress intended. Again, subsection B-4 speaks broadly of another tax that discriminates against a rail carrier. This Court has long recognized that taxes can discriminate in a number of different ways, including by granting some taxpayers an exemption and not granting that exemption to other taxpayers. That's the ordinary meaning of discriminates, and the broad and unqualified language in B-4 is easily susceptible to that meaning. Kagan. Ms. Sherry, there seems to be a question as to what remedy somebody would be entitled to under subsection C in a challenge brought against a tax exemption. So what's the government's position on that? The government's position, first, with respect to subsection C, is that it is a broad grant of jurisdiction to the district courts to adjudicate all violations of subsection B, and that seems clear from the first sentence in that provision. I'd also note that the arguments that were made with respect to subsection C in this case were brought up by the government in ACF, and in ACF the government explained why the best reading of subsection C is a broad grant of jurisdiction over all violations of subsection B. That's clearly what Congress intended. While Congress intended to provide a substantive right for rail carriers to come into court and claim discrimination on one of the four, under one of the four subsections, it also intended to provide a Federal forum. And the reason that it did that was because, at the time, rail carriers were having a very hard time bringing claims in State court. The Tax Injunction Act was out there then as it is now, and it does provide an exception, rather, for when State court remedies are not plain, speedy, and efficient. Ginsburg-Miller, I think Justice Kagan meant to ask, assuming that we say yes, it applies, exemptions don't count anymore, don't are included in whether there's discrimination, and the Court finds discrimination between the way the railroad is taxed, the way motor carriers are taxed. What then? What is the remedy? I think in that type of case, the remedy would be for the rail carrier to be exempt from the tax, and that's because what subsection C provides. Without putting on the – I mean, the motor carriers do have the tax. Oh, I apologize. I should back up. I'm assuming that when you said that the court found that there was discrimination, the court had already engaged in inquiry as to whether or not this other tax compensates for or provides a justification for any differential treatment. If the court were to find discrimination but find that maybe, you know, 50 percent of the tax was compensated by this other tax, it could remedy that situation by only enjoining, and it should remedy the situation, by only enjoining the discriminatory portion of the tax. Roberts. Well, but in any case, when you have discrimination, you can remedy it by reducing the tax, for example, in this case on the railroad, or by increasing the tax on the people who are otherwise exempt. A decision that I suppose would be left at some point or another up to the State. It would certainly be left up to the State, and the State could choose to remedy it in any number of different ways, including the one that Your Honor suggests. But the remedy that's actually provided for in subsection C for the Federal court to issue is to enjoin the discriminatory portion of the tax. And the focus is on the tax. Roberts The discriminatory portion of the tax may be regarded as the excess that's imposed on the railroad or the deficiency on the others. I think it's better understood as speaking specifically to the tax itself and not to the tax exemption. And in fact, in the at the cert stage, when the government suggested a reformulated question presented, it reformulated the question to better focus on the fact that this is a challenge to a discriminatory tax and not to a discriminatory tax exemption. And I think the State, in its supplemental brief at the cert stage, acknowledged that that is the better way and the correct way, in fact, to look at these type of challenges and what the appropriate remedy would be. Kennedy You present the case to us as if it's either-or, that we must either, in disagreement with your position, say that it doesn't apply to exemptions, or that if it applies to exemptions, it must be remanded. Can't we say that exemptions are not covered by the Act unless the railroad is a target, an isolated target, and it's clear that it's discriminatory? I mean, do we have to have your either-or position? Sherry I don't know that the Court has to go with one or the other, but I think the Court should not hold that it only applies to exemptions to the extent it's a type of tax where it's generally applicable on its face, but everyone is exempt except for the rail carriers, or everyone is exempt except for the rail carriers, and maybe some targeted and isolated group, as this Court recognized in ACF. And the reason I think that is so is because that's what the language provides in v. 4. Certainly, Congress was concerned with taxes that would single out a rail carrier, but that wasn't their only concern. And an example I've thought of that I think helps put that into some perspective is, I think Alabama would concede that if instead of imposing a generally applicable sales tax, it had a separate excise tax on diesel fuel for use in locomotives, and it was a 4 percent tax, looks exactly like the one we're looking at, except it's a separate excise tax, that that would be the type of singled-out tax that could be challenged under v. 4. And it makes little sense to say that a State could basically insert that type of tax into a generally applicable sales tax, and that would be immunized from any scrutiny. The adverse economic impact on the rail carriers is the same, whether you're looking at a singled-out tax or whether you're looking at a generally applicable tax. Scalia. It doesn't make any sense. You're quite right, but Congress thought it made sense in v. 1 to v. 3, so why doesn't it make sense in v. 4? That's the argument. I think the reason that Congress thought it made sense in v. 1 through 3 and the reason that this Court in ACF concluded that Congress wanted to permit property tax exemptions is because of the language of v. 1 through 3 and because of the very specific comparison class that's provided there that's noticeably absent from v. 4 and, in fact, really wouldn't work in v. 4. And what I mean by that is if you look at v. 1 and you look at v. 3, it's a comparison between rail transportation property on the one hand and commercial and industrial property on the other. And as we all know, commercial and industrial property is specifically defined to encourage the use of a single-use tax. May I finish? You can finish the sentence. I don't know if I will get to the point, but if I could say the point is v. 4 doesn't talk about property. It talks about discrimination against the rail carrier, and the comparison class is nowhere to be found in that subsection. Thank you, counsel. General Mays. Mr. Chief Justice, and may it please the Court, Justice Kennedy, you hit on the proper definition of a tax that discriminates in this case. A tax that discriminates under v. 1, 2, and 3 is a tax that singles out railroads as compared to the general mass of taxpayers. So another tax that discriminates is a tax that singles out railroads as compared to the general mass of taxpayers. The pivotal question in this case is one raised by Justice Kagan and Justice Scalia, and that is, why in the world would Congress on the one hand say, you can exempt property taxes under this statute, but you can't, we are prohibiting sales and use tax exemptions, when for 15 years Congress never had a single hearing, a single study, and never even heard a single complaint from the railroads about discriminatory sales and use taxes? Well, it may be because the universe of non-property taxes is so infinitely large that there is a much greater room for a much greater danger of discrimination. We know all States have property taxes. Right. But, again, I think the answer is what Justice Ginsburg was pointing out. We would say the United States, and CSX still has not come up with a good reason, they basically said the United States said you just look at the statute and it tells a different story. There are three good reasons that Congress would have intended and the Court should read property tax exemptions and non-property tax exemptions to be read the same way, and the first one is, is the one that Justice Ginsburg was pointing out. The purpose of the statute was to protect out-of-State, interstate businesses from being easy prey in the State legislature. They don't have voting power. But if you put an interstate business in the generally applicable tax scheme, that means they are paying the same tax as the local businesses and the local taxpayers they are protected. If the tax rate goes up, the local businesses, the local taxpayers will protect them. If too many exemptions occur, the local taxpayers and the local businesses will protect them. Alito, you are arguing in favor of a very idiosyncratic interpretation of the concept of a discriminatory tax, aren't you? In almost any other context, granting tax exemptions to one group but denying them to another group would be viewed as, if there isn't a good reason for drawing the distinction, as discrimination, wouldn't it? Yeah. So I definitely agree, as an abstract matter, an exemption could be a tax that discriminates. But what Congress has taught us in 1 through 3 with regard to property taxes is you can grant an exemption, and Congress didn't want to, and they also told us. And it did so with explicit language by in, what is it, A-4, by referring to property that is subject to a property tax levy. So what you are saying is that the ordinary interpretation of the concept of a discriminatory tax should not be applied here because Congress used specific language to take tax exemptions out of the determination of discrimination under other provisions. What sense does that make? What sense does that make, where the fact that they specifically took it out of some provisions, but not out of this provision, you think leads to the implication that they meant to put it in here, too, where they could have easily used language here to put it in? Right. Well, I would say that Congress wasn't even thinking about nonproperty tax exemptions when they wrote B-4. But the answer is our argument is to say that we understand from the structure of the statute as a whole that Congress didn't intend to preempt the State's ability to issue tax exemptions. Sotomayor, may I pose a hypothetical so that I understand, and I think it follows up on what Justice Alito was saying. Let's assume all taxes are equal between water carriers and railroads, except there is an excise tax, 4 percent on the railroads, 2 percent on the water carriers. Right. Everybody else pays 4 percent. On your theory, is that discrimination or not? No, because they are paying the generally applicable 4 percent tax. Again, remember, in the property tax. But this is not an exemption area. So what meaning do you give? That's what I'm trying to figure out. Are you saying, what meaning are you giving to discrimination at all, other than unless we accept that the class always has to be the commercial class? I'm giving the meaning, the same meaning the Court suggested in ACF, that is, B-4 is a tax. Another tax that discriminates is one that singles out the railroads. Well, you can single out the railroads through exemptions. I mean, let's say you have a tax of $1,000 per mile per day for anything that uses a thoroughfare in the State. However, things that use roads, waterways, you know, the long list that in effect leaves only the railroads exposed. You're saying that can't be regarded as a tax that discriminates against the railroads? I'm saying that a tax that in effect in the end singles out the railroads because they're the only one that pay it, that would be discrimination. Oh, okay. So what if there's only two that pay it? You know, only, it applies only to railroads and bicycles. Well, then again, the tax wouldn't be generally applicable. This is what the Court went over in ACF. In this case, the parties have agreed that there's a tax that is not generally applicable based on the exemptions. If everybody else is exempt, well, it's not generally applicable. If just bicycles are also exempt, then it's not generally applicable. We have to look at the exemptions to decide whether there's discrimination. No, actually, you're not supposed to look at the exemptions at all. If you think about property taxes, when you have a generally applicable property tax, exemptions are removed from the comparison class at all. All you're looking at are the businesses that pay the tax. And in that case, as long as the businesses that pay the tax are paying the same rate, which would give them the same rate. Sotomayor So if there's a hundred businesses, where does the line between signaling out the railroad get drawn? When they exempt 98, when they exempt 97, when they exempt 95, or is it at 80? Where do we draw the signaling out if a State says the general tax is 4 percent, but everybody but how many are exempted? Well, again, I would say that you use the phrase, I know that signaling out is not the best answer, that the lower courts have looked at it. We've seen cases where even 80 percent, as long as 20 percent of the businesses in the State are paying it, it's generally applicable. Sotomayor What sense would there be for Congress to use the word discriminating and intend, in the hypothetical I gave you earlier, that railroads will pay 4 percent like everyone else, but their competitors, for no reason other than that the State wants to favor the water carrier, is only paying 2 percent? What conceivable reason would Congress want that differential to exist? Because Congress understood that exemptions for individual business are I'm not talking about an exemption. I'm talking about a rate difference. If you are giving a rate difference, a benefit of any kind, to an individual business, Congress understood that that is important to the States. Let's say, for example, we have a business who has had an economic crisis or we want to bring a new business into the State. Congress understood that's important to the State tax policy. The point of the statute was simply to put the railroads on equal footing. Again, if you think back to property taxes, we can treat trucks however we want to. We could exempt them. We could treat them at a different rate. As long as the railroads are paying an equal rate to the general mass, it's not discriminating. Alito Suppose there is a commodity that is purchased by only railroads and one other class, and there is a 4 percent sales tax on this commodity, but the other class is exempt from the tax. Now, is that discrimination against the railroad? Can you explain the classes again? Let's say there is some commodity that is purchased only by railroads and truckers. Okay. And there is a 4 percent tax on the commodity, but truckers are exempt from the tax. Is that discrimination against the railroad, even though it takes the form of – it's not discrimination against the railroad because it takes the form of a tax exemption? No. Again, in that instance, like the Court said in ACF, that would be a case in which the railroads have been singled out. Because only two businesses were paying the tax, one has been exempted, then the railroads are the only one left. Alito But I think once you say that, your argument that exemptions can't count as discrimination is destroyed. Because you are conceding that an exemption can constitute discrimination, aren't you? At that point, as the Court said in ACF, it's not an exemption scheme anymore. At this point, it's just a tax on the railroads. And again, there's no reason in the text or the structure of the history of the Act to treat property taxes any differently than sales and use taxes. Kennedy Well, then we need to – then you need to give us a test. And the test is whether or not the railroad is singled out as a target group for discrimination. Something like that. And that's the test that Judge Posner gave in the pre-ACF case. That's the test the Court suggested in ACF. That's the test that the Eleventh Circuit used here. You know, one of the problems Roberts I'm sorry. Just sort of follow up. What – and that test says what? Kennedy The test is a general – as long as it is a generally applicable tax that does not single out or target the railroads, it is not subject to challenge. In fact, the Court Roberts So that – and I'm sure I'm just repeating myself here. So that it doesn't single it out if there's one additional business or line of business subject to the tax, no matter how small that exemption is. You mean how small the business is that's actually paying the tax. Roberts Right. Kennedy That's a question for the Court. Excuse me. Joked. That would be a question for the Court, yes. Roberts Exactly. So the Court can – has to decide, even when you're dealing with exemptions, whether or not that discriminates against the railroad. Kennedy Right. But it's the same thing. Roberts Well, that right, I think, means you lose the case, at least as the question presented has been addressed. Because all we're deciding – I understand you think we ought to decide more. But all we're deciding is, can B-4 ever come into play when the discrimination arises from an exemption? Kennedy No. The question presented precisely is whether a State's exemptions of rail carrier competitors, but not rail carriers, from a generally applicable sales and use tax. In this case, we've already presumed that the fact has been established that this is a generally applicable tax. The Eleventh Circuit has already made that determination. CSX and the United States agree with it. There's no question in this case that it's generally applicable. The only question is, is under the test we've just articulated, does it single out the railroads? No. Everybody agrees it's a generally applicable tax. Thus, as a matter of law, it cannot be another tax that discriminates. Again, I think that's the question. Sotomayor So to answer that question, you're telling us that we have to define what discrimination is. Kennedy I think inherently you have to understand what another tax that discriminates is before you can say whether something is subject to challenge as another tax that discriminates. One of Justice Scalia's points earlier was, to Mr. Phillips, there's no limiting principle if you treat property tax exemptions differently than nonproperty taxes. And not only can they change the comparison class, the railroads do. They'll argue against the States' different comparison classes. Take Justice Kennedy's example. If the local farmers are exempt, they would argue that that is discrimination against interstate commerce, again, the phrase Congress used to bind the four together. We've had cases at the same time that Burlington Northern was arguing the diesel fuel cases on an interstate competitor class. They've turned around at the same time in Wyoming and argued that a coal transportation tax was discriminatory because it singled them out versus the general tax. Roberts That's the way — that's what railroads do. But it still doesn't get to the question that in courts in each particular case, we'll be able to decide, even under your test, whether it singles out railroads The only question I have is that whether singling out means railroads have to be the only business subject to it, or if it has to be, you know, some theory, Justice Kennedy was looking for a test, and I don't know if we've got a workable one, to decide when it's really discriminating against the railroad and when it's the exemptions are just the way taxes normally work. And, again, if we adopt the test, which we believe is the right test, the Eleventh Circuit's already done it at this case. This would be a question for another case. Again, there is no more generally applicable tax than Alabama's 4 percent sales tax. Breyer Don't you happen to have just pushed all the difficult questions into the word generally applicable? I mean, imagine a fuel tax applies to everybody in the State, but then we exempt everybody who does business in the State with fuel, except for railroads. All right? Now, you want to call that not a generally applicable class? Do you want to call it a discrimination against railroads? It seems to me about the same question. All right. So why isn't the easiest thing to say, since there are so many other questions involved in discrimination? Yes, the clause applies. What counts as a discrimination is an obviously difficult question, and we will send it back for somebody else to wrestle with this, since it's so difficult. Here's the problem that the State has with that, and you've almost channeled what Mr. Phillips said earlier, that we leave it to courts to determine discrimination. Well, what's the choice? Well, this is a State tax. Under the clear statement rule, you know, we detrimentally rely on these statutes when we determine whether we can tax someone or not. Now, you know, if the courts were to say you can't prospectively tax because you lose, that's one thing. But we have taxed the railroads. I realize that, but what they're worried about is that somebody that's having passed on the property level thinks I have a great revenue-raising idea. What we do is tax the New York Central, and then they sit down with a bunch of lawyers and the lawyers say, oh, great, they come through this State, what we'll do is we'll have a tax that applies to all fuel, and then we'll exempt everybody except the New York Central, all right? Great. We've now found a replacement of the revenue that they just said in Congress we couldn't have in the first three provisions. Right. And again, that would be the test that we've talked about. Well, no, because it's you're saying, oh, that's not generally applicable. They say, sure it is, read the first line, applies to everybody. And so you say, no, no, that's a trick because it's the second line. So now what we'll do is we'll monkey around with it a little bit, and we'll make it tough. All I am saying is that's precisely the same question in that context as whether it discriminates or not. I'm not saying it's an easy question. I'm just saying it might be clearer if we said, yes, the thing applies, now go work out the hard question of whether you've got a discriminatory tax. And, again, the problem we would have with that is now you're going to have two different definitions of what another tax that discriminates in B-4 for property taxes, which CSX agrees applies to property taxes. Scalia. Well, with property taxes, the language is different. I didn't understand your last point. What was it? CSX argues on page 8 and 9 of their reply brief that with regard to property taxes, B-4 would apply if the tax singles out the railroads. But now they're arguing another tax that discriminates, the very same phrase, means any differential treatment of any kind when it comes to nonproperty taxes. To agree that the test would be different is not only not clearly required by the statute, it would be illogical, because what happens is you can have an infinitely broad definition of discriminate. Any treatment that we do differently for nonproperty taxes is discrimination, which not only does it make the most favored taxpayer, they might as well be considered charities, billion-dollar charities. We could never tax them at all, because we exempt someone from every single tax we levy. For example. Breyer, you're assuming how the Court will decide the word discriminate. Yes. I understand what you're saying, and so would every other judge. And of course it's hard to figure out in these contexts what is a real discrimination, but there could be obvious cases. And so why cut out the obvious cases simply because it's hard in a nonobvious case to figure it out? Because Congress didn't clearly put in the statute that we want a different definition for discrimination. Breyer, no, but there is no way, there is no way with the property. The property tax is tough, and once you start taking exemptions into account, it's double tough, and there's very little need, is there? Every State in the country has property taxes, and every State in the country has property taxes on businesses, and it might not be so that every State in the country has particular taxes on diesel fuel. And it might be that they don't have taxes on rails, or they might be that you see the so I that's how I'm explaining it to myself. What do you think? I think that if well, first of all, every every State taxes diesel at least for truckers and most do for the trains. But if Congress were really thinking about this, they should have told us what discriminate means. And I think that, honestly, I think we should go across the street and have them tell us, but but they're not here. And what we're saying is, is the easiest way to do this and the proper way to do it is simply to read the test to be the same for property and nonproperty taxes. If the test is singled out railroads, when you're talking about property taxes, it should be the same. Again, the point would be we can't tax at all nonproperty taxes, at all, if the definition literally is any differential treatment. Congress never would have intended to literally prohibit States from taxing. Sotomayor Well, it's not quite it's not quite that. You forget the other part of the test, which is without a reason. Now, the other side hasn't defined what a legitimate reason would be, and that's a separate inquiry. But if there is a some form of legitimate reason to treat people differently, I think the other side's saying that's okay. I think the other side would tell you that we can't give a justification. Again, the one time we are having to do this is not fair. Sotomayor Well, in their particular facts of their case. I mean, that's what they have to come up and explain to us what's the what's the defining principle of acceptable or unacceptable different treatment, because it can't be, you're right, logically it can't be most favored taxpayer status. But that is logically what would happen. Sotomayor Well, so far, yes, unless they can give a definition of this way. They haven't articulated a way yet to prevent that from happening. Scalia But I don't understand why you think it is it is more articulable on your theory than on theirs. I don't see how we're solving your predictability problem. You're worried about it. You know, we don't know how to tax anymore. I don't know why it's any more certain if we if we say the the key is whether it's a generally applicable tax than it is if we say the key is whether it discriminates against railroads. I mean, it's the same inquiry.  It's just as just as unpredictable ex ante. It's exactly the same inquiry, whether it's generally applicable or whether it discriminates against railroads. Isn't isn't isn't that what you've been saying? What I've been saying, yes, is a tax doesn't discriminate. So it's twiddle-dum or twiddle-dee. Maybe we should, you know, dismiss this as improvidently granted. It doesn't make any difference. I would have no problem if you dismissed it as improvidently granted. I would I would certainly accept that. And again, if the test is the same, the Eleventh Circuit's already answered the question. Breyer, but it's not quite, because this is the same problem I was raising. You've just shoved all the difficult questions into generally applicable. But you might think of some new ways of doing it, what they don't want. And so I'd worry about giving you just the decision where the word in the statute is discriminate. And nowhere does it say generally applicable. I'd somewhat worry about whether this statute shoves the same problems into two words that aren't there, as to rather leaving those problems for resolution under the one word that is there. The statute actually does use the word generally applicable. If you'll turn to page 25 of the Joint Appendix. I'll believe you, I'll believe you. Well, but it makes a good point. In the original version of v. 3, you could not levy a tax against an ad valorem property tax at a tax rate higher than the tax rate generally. The word I was looking at is 4, impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the board under this part. Now, I read all the words of 4, and I found the word discriminates, and I did not find the two words generally applicable. Right. And you'll find the word discriminate at the beginning of the section as well, saying each of these discriminate against interstate commerce, meaning that they all discriminate in the same manner. Again, if you think about it, when you have a specific provisions or several specific provisions followed by a general, you have to give some independent effect to the specific provisions. Here's the problem with CSX's argument. The independent effect that they're giving v. 1, 2, and 3 for property taxes is that they are narrowing the prohibition on discriminatory property taxes from the infinitely broad anything-goes discrimination test for all property taxes, which, again, is illogical when the only thing Congress talked about for 15 years was discriminatory property taxes. Roberts. Counsel, do you think section 11501C is relevant to these disputes? Because one thing 11501C does is give the State a little bit of a break. They recognize that it's hard to have exact equality in terms of ad valorem property assessment. So what does it say? So you had a 5 percent wiggle room. Yes. And couldn't you, if we rule against you when you get back and other State officials say, look, the one thing we don't have to worry about is being precise? We've got some wiggle room, so we can exempt the 85-year-old widow. We can, you know, exempt the farm property. We've just kind of got to get it close so that somebody looks at it and they'll say, well, it doesn't really look like they're discriminating against railroads. Why isn't that pertinent and why doesn't it respond to a lot of your concerns? Textually, that's a problem, because the 5 percent sentence only applies to assessment ratio problems in B-1 and B-2. And the rest of it is not. Roberts. I'm using that not as saying this is applicable to B-4, but that it gives you an idea that Congress didn't have a precise, absolute rule, and you go, you know, one inch over the line and you're in trouble. I don't think at that point the courts have any idea what they can do. How did the State know what is over the line and what's not? I mean, now we know as long as we subject them to our generally applicable tax, which is what all the States did when the 4-R Act passed. Scalia. But you don't know what generally applicable means. Or at least I don't know. How do you know? Because I know that everyone who pays the diesel fuel tax pays 4 percent. It generally applies to everyone. A problem that you have with subsection C, again, and that the United States and CSX has avoided so far, is it is a jurisdictional problem, and it's been raised by one of our amici, even if there's a B-4 violation, which we obviously don't agree that there is, it says that no relief can be granted unless you have an assessment value problem of plus or minus 5 percent. Roberts. It clearly applies to B-1 through 3 and has nothing to do with B-4 because it can't apply to B-4. B-4 is not a property tax, B-4, the whole point is it's not a property tax, you don't have ad valorem assessment. So the details limiting jurisdiction when you do have ad valorem taxes don't apply to this case at all. The problem with that is that CSX's argument is now you're reading into Congress's intent for the statute. And the moment you open up to what Congress's intent for the statute is, we know that Congress didn't intend to make railroads the most favored taxpayers in any way. The railroads actually said that themselves. If you start reading intent into the statute, the intent was simply to put them on equal footing. So you'd have to read B-4 to say, just like property taxes and nonproperty taxes, as long as they're subject to a generally applicable tax, there is no jurisdiction for discrimination, you're not subject to challenge. So, again, I don't think that would be an issue. Now, one of the problems I see that the Court has is this fear that the States are going to take a generally applicable tax and then all of a sudden start exempting everyone. Let's say, for example, to the State of Alabama's sales and use tax. It's not going to happen for a very simple reason. Our sales and use tax funds our schools. At the moment we start exempting every single business, our schools don't have any money. We're not going to pick on the railroads by exempting, exempting, exempting, exempting. The railroads, quite honestly, can't fund our schools. We're having a hard enough time funding them as it is, and we're not going to just target railroads by exemption. So I see that the Court might have a problem understanding what's the line with exemptions, but it's just never going to happen. Scalia. Why is that any different from property taxes? I mean, States would say the same thing about property taxes. Nonetheless, it was felt necessary to specify that exemptions don't count for deciding whether you're discriminating against the railroads. Again, because Congress understood that exemptions are an integral part of the State's tax policy. We need to be able to give exemptions to individual businesses. Sotomayor, I'm having a problem. I thought, as you argued it in your brief, that you were only arguing that States can tax-exempt. But you're asking us to rule more broadly to say that States can treat imposed taxes differently. So it doesn't really matter that it's a tax exemption. You're just saying if the tax is a positive imposition or a negative one, taking someone out, it doesn't matter. Right, because that's the way it works for property taxes. Let me be very clear what we're asking the Court to hold. On page 335 of ACF, this is what the Court held in that case. A State may grant exemptions from a generally applicable ad valerum property tax without subjecting the taxation of railroad property to challenge under B-4. All we're asking the Court to do in this case is substitute three words. Ad valerum property is out, sales and use tax is in. There's nothing in the language, the structure, or history of the act that would suggest, much less clearly and manifestly mandate, which is necessary under the clear statement rule, that that rule should be any different. Again, it would be illogical, because it would be illogical to think that Congress spent 15 years worried about one problem, and that problem is that the States were discriminating in property taxes. There's one clear, easy way to see that the railroads didn't really believe that this was a clear statement against generally applicable sales and use taxes. As the point was made earlier, the railroads will sue us all of the time to save money. It's very telling that the railroads didn't sue any State, despite the fact we've been taxing this way since the 1930s until the late 80s or early 90s under this theory, because even they, when they read this statute, understood it to mean only if we're singled out or targeted. That's the way they litigated B-4 for the first decade. It's only when they couldn't win those cases anymore that they changed what they believed it meant. But the fact that this was able to – again, sales and use taxes is their most expensive tax. And as they say in the Norfolk Southern opinion, the third largest expenditure of the railroads is diesel fuel. If the third largest expenditure of the railroads is out there to be taking away the taxes, they certainly would have sued us within the first 10 years if this statute clearly said we couldn't do it. But nobody believed that's what the statute said because Congress never said it in the entire 15-year history. The statute itself, when you read it, doesn't say it. And just as the Court said in ACF, this statute is at best vague on the point of tax exemptions. And in that case, under the clear statement rule, you have to defer to the State. Congress needs to tell us specifically what we can and can't do. Kennedy. Kennedy. What authority do you have for the proposition that the clear statement rule applies to the exercise of the congressional power in the Commerce Clause? Is that some general rule that we've always had? The ACF actually applied the clear statement rule. Not only said it applies, that it compels the ruling in this case. The — I'm sorry, I've got the page number. In ACF, you said that was — sorry, I just went jaw-blank all of a sudden. Regardless, it's in ACF. The Court said that — sorry, it's page 345 of ACF. The Court said, absent unambiguous evidence, was one of the quotes, and then at the end it said, you have to show Congress's clear and manifest purpose. And the Court said because you can't see a clear and manifest purpose, because there's no unambiguous evidence. Again, because the statute doesn't talk about tax exemptions at all. But in all these years where they never challenged it, did all these other States not only tax their diesel fuel, but at the same time exempt the diesel fuel tax from all their competitors? Absolutely. We've been doing it since the 1930s. As you'll see, it's — What's the rationale that the trucks don't have to pay it, but the railroads do? Because Federal law makes us do it. Federal law taxes diesel fuel differently on-road, and they make us die fuel off-road. And because they're taxed differently at the Federal level, the States have had to adopt it. In fact, the Hayden-Cartwright Act up until the 1980s forced us to do so. So we've been doing this since the 1930s. Congress obviously knew we were doing it when we wrote the 4R Act, and yet nobody ever complained. Congress knew exactly ‑‑ Roberts. Thank you, counsel. Thank you. Mr. Phillips, you have 5 minutes remaining. Thank you, Mr. Chief Justice. Just a few quick points. First of all, with respect to the reason why the States didn't challenge these tax exemptions earlier, for some of us it's relatively easy to remember what the price of fuel oil was back in the 1970s. It was somewhere in the sort of 10 to 30 cents a gallon range. And therefore, exemptions of that amount of tax, 1 percent exemption of that amount of tax is not a whole lot of money. Today, the rate's of $4 a gallon, and an exemption under those circumstances, particularly when you have a fixed rate for your major competitor, gives you a more than substantial incentive to bring an action under these circumstances. The notion that somehow the State has gone down this path because of Federal law has not been true for at least 15 years. That statute was repealed, and Alabama could have modified its tax however it wanted to and chose not to do so. Justice Alito, your hypothetical I think is almost exactly this case, because, as my friend indicated, diesel fuel is by far the biggest expense that the railroads have. It's also a very significant expense for the motor carriers, and it is a pretty trivial expense for everybody else in the State of Alabama. Scalia. Mr. Phillips, do you agree that generally applicable produces the same, requires the same inquiry as discriminates? Well, you're ultimately going to have to come down to the same issue. And the problem is, and the reason why I find it hard to accept Justice Kennedy's formulation, which is simply singling out the railroads, because in ACF the Court sort of said, well, you know, we'll hold that out as a possibility if you're doing one thing, if you're just singling them out. But it seems to me that in a statute like B-4, where you are more broadly and you don't have the B-1 to B-3 baggage to deal with property taxes, the idea that you would then limit B-4 solely to the situation of singling out is simply not a fair way to characterize it. Sotomayor, give me a definition of discriminate. Give me your working to can't, as I start to ask your adversary, can't be most favored taxpayer status. All right. It has to be the traditional and common understanding of discriminate is that you treat similarly situated individuals differently without an adequate justification. So what constitutes an adequate justification? Well, it depends on the tax. And I don't know the answer in this context, because, as Justice Alito's question reveals, it could be that the vast majority of diesel fuel is. You're going to grant an exemption and you're going to treat someone differently because you're favoring them for a reason. People don't, States don't do these willy-nilly. Either some enterprises or some individuals, like the 85-year-old widow, you're sympathetic to her. You want to encourage your water transport because it's an industry that's nascent in your State and you want it to grow. So it's a pro-competition reason. Are those legitimate? And if those are, what is it? I mean, the first one I think would have a question. I think the second one has more of a problem, because I don't think Congress intended to allow you to favor direct competitors of the railroads when the ultimate effect of that may be to undermine the financial stability of the railroads. Give me a working principle. What does – how do you define legitimate and illegitimate, assuming that a government reason is always going to be premised on wanting to favor someone for a reason? Right. I think ultimately the way to analyze this case is what was Congress's ultimate objective. And if the State's putting forward a legitimate reason that is fully consistent with Congress's overall objective, then there's no problem. That's the problem, because there were two objectives. One was to promote equality with local businesses, and the other to promote equality of competition among the – among carriers, right, which suggests to me that there are two ways to worry about discrimination. Have you singled out other carriers for more favorable treatment? There, I think the answer is per se, if you do that, you lose. If you have – and if you're not in that world and you're talking about some other classes, then it seems to me it depends on how far you want to go in terms of how much of an exemption you want to play. But the important part of this is still, and I think the question to Mr. Mays reflected, is that you should undertake the inquiry to determine whether there's discrimination even if the State happens to use the guise of exemptions as opposed to rate differentials or anything else. There's just nothing special about exemptions that takes it off the table. He proposes that Federalism concerns and that ACF spoke to this issue. ACF said you should not extend the statute beyond its evident reach, reflecting the B-1, B-3, and B-4 relationship, without a clear statement. That's not what we have in this case. Thank you, Mr. Phillips. Counsel, case is submitted.